Geoffrey C. Angel
ANGEL LAW FIRM
803 West Babcock
Bozeman, Montana 59715
Telephone (406) 922-2210
Facsimile (406) 922-2211

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SUZY ENBERG ) | Cause Number CV-11-125-BLG-RFC |
| ) | |
| Plaintiff, ) | ENBERG'S PRELIMINARY |
| ) | PRETRIAL STATEMENT |
| vs. ) | |
| ) | |
| AMERICAN HOME ASSURANCE) | |
| and SEDGWICK CLAIMS ) | |
| MANAGEMENT SERVICES, INC.) | |
| ) | |
| Defendants. ) | |

* * * * * * *

COMES NOW the plaintiff Suzy Enberg, by and through her counsel of record Geoffrey C. Angel, and hereby files this Preliminary Pretrial Statement pursuant to the Federal Rules of Civil Procedure, Local Rule 16.2 of the United States District Court for the District of Montana and this Court's scheduling order filed January 3, 2012.

## FACTUAL OUTLINE

This action is brought by Suzy Enberg against American Home Assurance and Sedgwick Claims Management Service for breach of contract and violation of Montana's Unfair Trade Practices Act in the adjustment and payment of benefits under Montana's Workers' Compensation Act.

## ISSUES CONCERNING JURISDICTION AND VENUE

Plaintiff does not anticipate any issues with jurisdiction or venue.

**FACTUAL BASIS OF EACH CLAIM**

Suzy Enberg worked for Walmart as a Stocker, Cashier and People Greeter from 2006 to the present.

On June 20, 2008 Suzy Enberg was lifting an air conditioner when she suffered a workplace injury to her back arising out of and in the course of her work. Shortly thereafter Enberg filed a First Report of Injury prepared by her employer Walmart and its Personnel Department. Sedgwick is a third-party administrator for American Home Assurance, Walmart's workers compensation insurer. Walmart, Sedgwick and American Home Assurance acted in concert and as agents of each other to deprive Enberg of her benefits under the Montana Workers' Compensation Act in breach of the contract and in insurance bad faith.

Sedgwick opened and accepted Enberg's claim. Thereafter Enberg sought medical attention at Occupational Health St. Vincent Hospital and complied with a conservative course of treatment for an injury to her SI joint. Sedgwick, or its agents, selected the medical provider. The course of treatment consisted of an examination, pain medication, physical therapy and followup appointments. Between 2008 and 2011 Enberg had good days and bad days including flareups of the SI pain that would cause spasms in the back muscles. After her initial course of treatment and during these periods of spasms she would go to Walmart and its Personnel Department and request permission to see a physician. Walmart personnel told Enberg her claim was closed and a doctor's appointment would not be approved. During this period Enberg went without the proper medical evaluation and treatment and was left to pay for Emergency Room visits herself.

On March 3, 2011 Dr. Douglas Parker saw Enberg in the Emergency Department at St. Vincent Hospital in Billings in the early morning hours for a muscle spasm requiring administration of morphine and a Medrol pack. Dr. Parker's note says the patient "was helping her kids with their sled in the park and the next day she developed increased pain in her low-back radiating into the

buttocks and becoming much more severe."

On March 21, 2011 Sedgwick wrote Enberg and advised her that Dr. Parker's note indicates she suffered an exacerbation injury to her back as a result of her children's sledding in the park. The note did not say that. In order to address these concerns, Enberg requested Dr. Parker and Physical Therapist Johnson respond to Sedgwick's determination based on Sedgwick's interpretation of the comments in their notes.

On March 29, 2011 Dr. Parker wrote an addendum to his report to address Sedgwick's interpretation of his earlier comments. Dr. Parker clarified "[t]he note really does not say that the activity in the park caused her pain because I do not know that. In fact, I think that is unlikely."

Despite this clarification, Sedgwick denied the claim arguing Enberg suffered an exacerbation of her injury as a result of her children's sledding in the park. American Home and its adjuster Sedgwick failed to investigate or otherwise adjust Enberg's claim for workers compensation benefits. American Home and its adjuster Sedgwick refused to pay for Enberg's medical treatment and refused to pay any wage loss or other benefits under the Act. Enberg did not receive proper medical treatment for a number of years and did not receive any wage loss benefits under the Act from March 12, 2011 to October 7, 2011. Enberg was also barred from work. Enberg was denied all periodic payment of TTD benefits for a period of over six (6) months. Some of Enberg's medical bills remain unpaid to this day.

On May 20, 2011 Enberg filed for mediation of her claim for benefits under the Workers' Compensation and Occupational Disease Act. The matter was mediated on June 21, 2011 at which time American Home and its adjuster Sedgwick maintained the claim for benefits was caused by an exacerbation while sledding or that it was caused by an incident she reported while lifting batteries. Notably, American Home and its adjuster Sedgwick did not seek an independent evaluation of Enberg under the Act prior to or during the mediation period. In

order to address Sedgwick's claims, Enberg filed a First Report of Injury or Occupational Disease for the battery incident. Walmart failed and refused to timely submit the First Report of Injury to Sedgwick.

On July 25, 2011 Enberg filed a Petition for Hearing before Montana's Workers Compensation Court to enforce her right to benefits under the Workers' Compensation and Occupational Disease Act. Thereafter, Sedgwick received the First Report of Injury for the battery incident and requested Enberg submit to a defense medical expert panel evaluation of her injuries with Drs. Dale Peterson and Blackshear Bryan. Sedgwick through defense counsel asked Drs. Dale Peterson and Blackshear Bryan direct questions about the cause of Enberg's current condition. These physicians unequivocally stated it "was most likely a late development from the injury of June 2008." These physicians said it was possibly related to the second claim but "most likely a late development from the injury of 2008." *Letter Peterson to Maynard dated August 25, 2011, Complaint Exhibit A.*

> 1. What is the cause of Ms. Enberg's current condition?
>
> Answer: She developed a mechanical lumber pain syndrome without neurologic findings on June 20, 2008. Her symptoms never cleared as one would expect in individuals with myofascial pain despite treatment. The lumber MRI at the time revealed degenerative changes at L5-S1 which had been asymptomatic. Although she continued to have pain and worked in a light to medium category she developed an exacerbation of her pain in later February early March 2011. When she developed an sciatic syndrome on the left in June, 2011 followup MRI revealed a large extruded disc protrusion at L5-S1. This fits with her current residual signs of left S1 radiculopathy. It is unclear when this protrusion occurred since these large protrusions in the midline can occur anytime, present as mechanical back pain and are not diagnosed unless they are eventually associated with neurologic findings or a screening MRI is obtained.
>
> 2. Is the current condition a natural progression of the prior workers' compensation injury from June of 2008?
>
> Answer: It was most likely a late development from the injury of June 2008 although the protrusion may have occurred in late February when she twisted at work.
> . . .
> 4. Was there an aggravation as a result of sledding with her children?

> Answer: There does not appear to have been an aggravation as a result of sledding with her children.

In response to this letter Sedgwick attributed Enberg's condition and need for light duty work to her February 2011 claim (battery incident). As a result, her TTD benefits were half what they would be under the 2008 TTD rate. Significantly, Walmart advised Enberg she cannot return to work until she is 100%. American Home and its adjuster Sedgwick had no medical opinions that Enberg's injuries or need for treatment were, more probably than not, due to the battery incident or her children's sledding. American Home and its adjuster Sedgwick had not obtained any medical contrasting or contradictory medical opinion and did not seek an OD review under the Act. During this period Sedgwick refused to provide discovery and created a discovery dispute which was submitted to the Workers' Compensation Court in an informal hearing. During the informal discovery dispute conference with the workers compensation court, American Home and its adjuster Sedgwick agreed to accept liability for Enberg's condition and attribute it to the 2008 work related accident. As of the date of the complaint, American Home and its adjuster Sedgwick still failed and refuses to pay all of Enberg's outstanding medical bills and other benefits under the Act. As a result Suzy Enberg was denied timely medical attention, she was denied timely wage loss benefits causing damage to her credit, she suffered grief, anxiety and a loss of course of life due to Defendants' bad faith insurance practices.

## **LEGAL THEORY UNDERLYING EACH CLAIM**

Plaintiff Suzy Enberg is an insured worker under a contract of insurance with Defendant American Home and its adjuster Sedgwick. Defendant American Home and its adjuster Sedgwick breached the terms of the workers' compensation insurance contract and its obligations to adjust the claim under the Acts.

Defendant has made a general business practice of violating the Unfair Claim Settlement Practices provisions of MONT. CODE ANN. §§ 33-18-101 *et. seq*. Defendant's conduct in dealing with Plaintiff's claim has been dilatory in nature in

direct violation of MONT. CODE ANN. §§ 33-18-201(6) and (13). Defendant misrepresented pertinent facts or insurance policy provisions in direct violation of MONT. CODE ANN. § 33-18-201(1). Defendant is guilty of actual malice as defined in MONT. CODE ANN. §§ 27-1-220 and 221 in that Defendant had actual knowledge that its failure to comply with the provisions of MONT. CODE ANN. § 33-18-201 would create a high probability of injury to Plaintiff and yet continued to act deliberately in conscious or intentional disregard of that high probability of injury to Plaintiff.

Defendants engaged in common law bad faith and malice. Plaintiff and Defendant are in inherently unequal bargaining positions. Plaintiff's motivation for entering into the insurance contract was for a non-profit motivation, i.e., to secure peace of mind, security, future protection. Ordinary contract damages are not adequate because (a) they do not require the Defendant to account for its actions, and (b) they do not make Plaintiff "whole." Plaintiff was especially vulnerable because of the type of harm he may suffer and of necessity placed his trust in Defendant to perform. Defendants were aware of this vulnerability. Defendants' actions did not conform to honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. Defendants' actions were intentional and willful when taken. Defendants actions were calculated to cause damage to the Plaintiff. They were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor. As a direct result of these actions, Plaintiff suffered humiliation, emotional distress and trauma, experienced physical pain and suffering, suffered a loss of course of life and loss of pursuit of her occupation.

## **COMPUTATION OF DAMAGES**

Plaintiff is seeking all special and general damages allowed by law including but not limited to interest on all sums that were due and owing under the insurance, and general damages for grief, anxiety and a loss of course of life. Plaintiff will

also seek punitive damages, costs and attorney fees.  The general damages are a matter for the jury but plaintiff anticipates asking for a sum in excess of $75,000.

## REPORT ON EARLY NEUTRAL EVALUATION

Plaintiff's counsel would recommend early neutral evaluation given those principles set forth in Local Rule 16.6 of the United States District Court for the District of Montana.

## RELATED LITIGATION

Plaintiff is unaware of any related cases.

## STIPULATIONS OF FACT AND LAW

Deziret Adair anticipate the parties stipulating to the following undisputed facts and law:

1. On June 20, 2008 Suzy Enberg was injured in an industrial accident. Sedgwick investigated the claim and accept liability.
2. Sedgwick is the third-party administrator of workers' compensation claims for American Home Assurance, Walmart's insurer in Montana.
3. The medical expenses and temporary total disability benefits paid by Sedgwick under claim number 5771921 were due to the June 20, 2008 industrial accident.
4. Suzy Enberg was not injured in a sledding accident.

## JOINDER OF PARTIES OR AMENDMENT OF PLEADINGS

Plaintiffs do not anticipate the joinder of parties or amendment of pleadings.

## ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION

Plaintiff may make a motion for partial summary judgment on liability.

## IDENTIFICATION OF WITNESSES

Plaintiff is aware of the following witnesses which may possess personal knowledge regarding the claims and defenses presented for trial:

1. Suzy Enberg
2. Marilyn Jacobs

3. Casey Lentz
4. Joe Maynard
5. Cory Fischer
6. Jill Hegle
7. DeAnn Robertson
8. Elizabeth Viviano
9. Cari Kirkness
10. Aaron Cofer
11. Marty Dewing
12. Diane Harper
13. Shelby Machowski
14. Ray Deering
15. Greg Villa
16. Don Lee
17. Don Cortez
18. Evelyn Irmen
19. Sandra Smith
20. Ramon Orozco
21. Mike Rasmussen
22. Sandy Goff
23. Rodney Hutchinson
24. Raymon Heady
25. Montana Commissioner of Insurance

**IDENTIFICATION OF DOCUMENTS**

Plaintiff is aware of the following documents which may be relevant to the claims and defenses presented for trial:

1. Sedgwick's Claims File
2. Sedgwick's contract with American Home Assurance

3.  Correspondence between the parties

**INSURANCE**

Plaintiff is not aware of any insurance which would cover this matter.

**PROSPECT FOR COMPROMISE/SETTLEMENT**

Plaintiffs believes there should be a reasonable prospect for compromise.

**SPECIAL PROCEDURES**

Plaintiffs do not anticipate any special procedures.

DATED this 21st day of February 2012


/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff


**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of February 2012 I caused a true and correct copy of the foregoing document to be served upon the opposing party or counsel by electronic filing and via United States Mail, First Class mail, postage prepaid and addressed as follows:


Gerry P. Fagan
George Kimmett
Moulton Bellingham PC
27 North 27th Street, Suite 1900
Billings, Montana 59103-2559

ANGEL LAW FIRM


/s/ Geoffrey C. Angel
Geoffrey C. Angel
ANGEL LAW FIRM
Attorney for Plaintiff